### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SAFEWAY, INC.**, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. RWT 04cv3929 |
| | * | |
| **SUGARLOAF PARTNERSHIP, LLC,** | * | |
| Defendant; | * | |
| | **** | |
| **SUGARLOAF PARTNERSHIP, LLC,** | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. RWT 05cv679 |
| | * | |
| **SAFEWAY, INC.**, | * | |
| Defendant. | * | |

### **MEMORANDUM OPINION**

These two cases concern the same dispute between Sugarloaf Partnership, LLC, the landlord of a shopping plaza in Germantown, Maryland, and Safeway, Inc., a food retailer that at one time operated a supermarket in that shopping plaza. The dispute concerns the terms of the lease for that supermarket. Safeway closed the supermarket on June 6, 2000, and notified Sugarloaf of the closure on January 10, 2001, but has maintained its lease and paid rent on the property since then. On October 12, 2004, Sugarloaf notified Safeway that it was exercising its claimed right to terminate the lease because Safeway had left the property vacant.

Safeway's position is that this notification was ineffective, because under the terms of the lease as Safeway reads it—incorporating the Second Lease Modification Agreement, dated October 9, 1985—Sugarloaf had only thirty days from Safeway's store closure notification to terminate Safeway's lease. Sugarloaf's position is that it had no time limit, because the original lease does not provide for one, and the Second Lease Modification Agreement says that it modifies "the second

sentence of Paragraph 30" of the lease, not Paragraph 13(c), the "Abandonment" provision that permits Sugarloaf to terminate the lease in response to a vacancy.

To resolve this dispute, each party filed suit against the other. Safeway filed a complaint in this Court (the "Safeway action," Civil Case No. 04-3929) on December 14, 2004, seeking reformation of the lease to make the amendment clear, a declaration that Sugarloaf did not and can not terminate the lease, and various monetary damages. Also on December 14, 2004, Sugarloaf filed a Complaint and Summons Against Tenant in Breach of Lease, seeking possession of the premises, in the District Court of Maryland for Montgomery County. Safeway ultimately removed this action (the "Sugarloaf action," Civil Case No. 05-679) to this Court.

The underlying merits of the dispute are not yet ripe for adjudication. Rather, now pending before the Court are several motions that were filed over the course of the spring, summer, and fall of 2005: Safeway's Motion to Consolidate [Case No. 04cv3929, Paper No. 14]; Sugarloaf's Motion to Remand and for Costs or in the Alternative to Abstain [Case No. 05cv679, Paper No. 18]; Sugarloaf's Motion for an Abstention and Remand Order [Case No. 04cv3929, Paper No. 20]; Sugarloaf's Motion for Partial Summary Judgment [Case No. 04cv3929, Paper No. 49]; Sugarloaf's Motion to Strike Safeway's Expert Report [Case No. 04cv3929, Paper No. 46]; and Safeway's Motion to Amend Complaint [Case No. 04cv3929, Paper No. 52]. A hearing on three of these motions was scheduled for October 31, 2005, *see* Case No. 04cv3929, Paper No. 33, but was cancelled after the Court was advised that a settlement in this case was likely and after it became clear that the motions were suitable for disposition on the papers pursuant to Local Rule 105.6, *see* Case No. 04cv3929, Paper No. 60.

The Court has withheld disposition of the motions in the continuing hope that a peaceful resolution of this case would be forthcoming. However, more than a year has passed since the first of these pending motions was filed, and more than five months have passed since the first suggestion that this case would imminently settle. It is therefore prudent to assume that this case will proceed further in litigation. Accordingly, the Court now rules on each motion, but with the hope that the parties can conclude their efforts at a mutually satisfactory resolution of these cases. Failing that, the business of justice will proceed without further delay.

### I. Sugarloaf's Motions to Remand or Abstain

In the Sugarloaf action, Sugarloaf has moved under 28 U.S.C. § 1447(c) to remand the Sugarloaf action to Maryland District Court because, it argues, Safeway's notice of removal was untimely. In the alternative, it argues that this Court should remand the case or abstain from hearing it under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because this Court does not allow summary landlord-tenant eviction actions and because such cases are better tried in the specialized state courts that Maryland offers. Case No. 05cv679, Paper No. 18. In the Safeway action, Sugarloaf likewise moves to abstain under *Burford*, or in the alternative, to stay the Safeway action pending disposition of the Sugarloaf action in state court.

The Court declines to remand or abstain in either case on any of these grounds.

*A. The Timeliness of Safeway's Notice of Removal*

In the Sugarloaf action, Sugarloaf filed a complaint in the Maryland District Court for Montgomery County on December 14, 2004. Case No. 05cv679, Paper No. 2. On December 20,

3

2004, the Montgomery County Sheriff's Department effected service by posting a copy of the complaint and summons at the premises, which had been vacant since 2000. Case No. 05cv679, Paper No. 8 (Opp. to Mot. to Revise, Vacate, and Stay) at 2. Trial was held on December 29, 2004, but Safeway did not answer or otherwise appear—apparently because it had not received any actual notice of the proceedings—and consequently was found in default. *Id.* It appears to be undisputed that Safeway first received actual notice of the Sugarloaf action and the default on February 15, 2005, when Sugarloaf filed an answer in the Safeway action in this Court, and first received a copy of the complaint and summons when it obtained them from the District Court for Montgomery County on February 17, 2005. On March 9, 2005, the state court vacated the default on fairness grounds. *See* Case No. 05cv679, Paper No. 19 (Opp. to Motion to Remand) at 4, 6–8; Paper No. 18 (Mot. to Remand) at 5. Not until March 11, 2005, did Safeway file a notice of removal in the Sugarloaf action.

Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Sugarloaf argues that this period began to run when the complaint and summons were posted on December 20, 2006, because the posting constituted "receipt . . . through service or otherwise." Sugarloaf's argument, however, requires a misreading of the service of process requirements imposed by the Maryland Code. Although Sugarloaf is correct that summary eviction proceedings in local District Court are not subject to the requirements normally imposed on civil actions, Sugarloaf failed to comply even with the minimal requirements Maryland law regarding eviction for breach of lease.

4

     Md. Code Ann., Real Property § 8-402.1(a)(2) provides that

> (i) If, for any reason, the tenant or person in actual possession cannot be found, the constable or sheriff shall affix an attested copy of the summons conspicuously on the property.
> (ii) After notice is sent to the tenant or person in possession by first-class mail, the affixing of the summons on the property shall be conclusively presumed to be a sufficient service to support restitution.

Sugarloaf failed to comply with § 8-402.1(a)(2)(ii): neither it nor anyone else ever sent Safeway notice of the eviction proceeding by first-class mail. Notice of Sugarloaf's termination of the lease is insufficient; Safeway was entitled to notice, by first-class mail, *of the filing of the action.* The standard District Court "Complaint and Summons Against Tenant in Breach of Lease" recognizes this; it states that "IT IS ORDERED, that [the Sheriff] notify[] by first class mail and summon the above-named Defendant . . . [and] that if [the Sheriff is] unable to serve the Summons on the Defendant . . . [he is] to affix a copy of the Summons conspicuously upon the property." Case No. 05cv679, Paper No. 2. Moreover, although the state court did not explicitly hold that service was defective, it did so *sub silentio* when it vacated the default judgment and concluded that it would be unfair to treat Safeway as having been on constructive notice of the proceeding.

     Because Safeway did not have actual notice until February 15, 2005, at the earliest, and because it did not have any other kind of notice "through service or otherwise," *see* 28 U.S.C. § 1446(b), before that, the notice of removal that it filed on March 11, 2005, was timely.

*B. Original Jurisdiction and* Burford *Abstention*

     Sugarloaf also moves to remand because, it argues, under *Glen 6 Associates, Inc. v. Dedaj*, 770 F. Supp. 225 (S.D.N.Y. 1991), this Court lacks original jurisdiction, and therefore removal jurisdiction, over a summary possession proceeding. In *Glen 6*, the court held that because "a

5

summary process [in an eviction proceeding] and a plenary civil trial, shaped by the federal rules, are very different," and because "the summary process filed by plaintiff could not have been brought" in federal district court, the court lacks subject matter jurisdiction. 770 F. Supp. at 228. Alternatively, Sugarloaf argues that this Court should abstain from deciding the Sugarloaf action under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), which held that federal courts should decline jurisdiction "as a matter of sound equitable discretion" in certain circumstances wherein exercising their jurisdiction would interfere with the implementation of a complex regulatory scheme under state law.

These arguments are without merit. As to this Court's original jurisdiction, the presence of different or more expeditious procedures in state court is not a reason to deny the existence of federal diversity jurisdiction. *See Hanna v. Plumer*, 380 U.S. 460 (1965). The holding of the district court in *Glen 6 Assocs. v. Dedaj*, 770 F. Supp. 225 (S.D.N.Y. 1991) appears to be that the "summary process" available to landlords under New York landlord-tenant law is such a specialized proceeding that similar relief is simply unavailable through a civil action in federal court, and that the federal court accordingly lacks original jurisdiction. 770 F. Supp. at 227–28. Whatever the merits of such a determination as to New York's summary proceedings, a similar determination is inappropriate as to Maryland's. Though summary, the Maryland action for breach of lease under Md. Code Ann., Real Prop. § 8-402.1 is recognizably a civil action, brought in a court of limited but broad jurisdiction, for a judgment at law that this Court is equally competent to enter. Because the parties

are diverse and the amount in controversy requirement is met, this Court has subject-matter jurisdiction.[1]

As to Sugarloaf's arguments that this Court should nevertheless abstain from deciding either or both actions, the inquiry must begin with the observation that federal courts "have no more right to decline the exercise of a jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (Marshall, J.). Although later decisions have clarified that this "treason" is not absolute in "exceptional circumstances," *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), abstention remains the exception rather than the rule. Indeed, *Quackenbush* held explicitly that "federal courts have the power to dismiss or remand cases based on abstention principles"—in other words, practice *Burford* abstention—"only where the relief being sought is equitable or otherwise discretionary." 517 U.S. at 731. In an action for damages—or in the Sugarloaf action, which is an action for possession of realty seeking a nondiscretionary judgment at law rather than an equitable decree—a federal district court cannot abstain under *Burford*. And although a court may, for instance, "postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law," *id.* at 730–31, this is not an option in this case because the

---

[1] Sugarloaf has not raised any challenge to the jurisdiction of this Court on the grounds that the jurisdictional threshold of $75,000 has not been met. Although this Court has the power and duty to examine its subject-matter jurisdiction *sua sponte*, there appears to be no reason for concern here: the net present value of the lease at issue, which has monthly rent in the tens of thousands of dollars, amply satisfies the jurisdictional requirement. *Cf. Waller v. Professional Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961) ("[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy.").

Sugarloaf action has been properly removed and there is no action to defer to in state court.[2] Under *Quackenbush*, the inquiry is at an end: this Court cannot abstain.

Even if *Burford* abstention were theoretically applicable, however, it would still be inappropriate here. Unlike the complicated oil and gas regulatory scheme in *Burford* or New York's comprehensive system of landlord-tenant law in *Glen 6*, this case revolves around the interpretation of an ordinary commercial contract—a type of legal question that is the daily bread of a federal court sitting in diversity. The instant cases not only fail to implicate a complicated statutory scheme, but they seem unlikely to implicate any questions of statutory interpretation at all; rather, they hinge on straightforward questions of contractual interpretation.

Accordingly, Sugarloaf's motions to remand or abstain in both actions will be denied by separate order.

## **II. Safeway's Motion to Consolidate**

Safeway has moved under Fed. R. Civ. P. 42 to consolidate the two actions. Under that rule, the Court "may order . . . the actions consolidated" if they "involv[e] a common question of law or fact." Fed. R. Civ. P. 42(a).

Seldom is there a clearer example of two cases that should be consolidated. The issues in the Sugarloaf action are entirely common to those in the Safeway action; although the latter action contains some additional claims, the primary question in both actions is the interpretation—and thus the effectiveness of Sugarloaf's attempted termination—of the same

---

[2] Likewise, because the Safeway action was brought originally in federal court, it cannot be remanded. Without a state court action to yield to, it too must proceed.

8

lease. The two actions merely represent the parties' race to two different courthouses, a race which the parties ultimately tied. Since the Sugarloaf action was removed here, the actions have been—rightly—treated essentially as one, and they should become one action formally as well.

Accordingly, by separate order, the two actions will be consolidated. The Sugarloaf action will be closed, and all further pleadings and orders in this dispute are to be filed in the Safeway action, Case No. 04cv3929.

### III. Sugarloaf's Motion for Partial Summary Judgment

Sugarloaf has moved for summary judgment that Safeway's claim for reformation of the lease (Count II in the Safeway action) is barred by laches. Safeway, Sugarloaf argues, waited too long after the signing of the disputed modification of the lease to bring the claim, because the Second Lease Modification Agreement was signed in 1985 and this action was not brought until 2004. Safeway, of course, was in possession of the lease and amendments that it signed all along. *See* Case No. 04cv3929, Paper No. 49.

Nevertheless, the doctrine of laches is not appropriate to this case. Laches, an equitable doctrine, will only apply when delay in bringing a claim is both inexusable and prejudicial to the opposing party. *See Ross v. State Bd. of Elections*, 876 A.2d 692, 704 (Md. 2005). In this case, there was no inexcusable or unreasonable delay. Even though Safeway was in possession of the now-disputed Second Lease Modification Agreement from the day it was signed, the mistake that it alleges is in the nature of a typographical error. Sugarloaf cites to *Keedy v. Nally*, 63 Md. 311 (1885), for the proposition that Safeway was obligated to exercise due diligence in discovering the mistake, but unlike the "remarkable" and "queerly phrased" document in that

case, the amendment here is not obviously flawed unless one notices a discrepancy in how paragraphs are numbered. Even if Safeway had noticed the discrepancy in 1985, it would have had little reason to believe that Sugarloaf would not resolve the discrepancy the same way that it did, and no reason to file a civil action for reformation about a such a minor-seeming error. Only on October 12, 2004, when Sugarloaf notified Safeway that it wished to terminate the lease, did the alleged error in the Second Lease Modification Agreement ripen into a live dispute. This action was filed just over two months later, on December 14, 2004, which under the circumstances was not an unreasonable or inexusable delay.

Having determined that there was no inexusable delay, it is unnecessary to decide whether Sugarloaf was prejudiced. Nonetheless, although the Court recognizes that twenty years after a lease is signed, it may be difficult to find reliable witnesses to the parties' intent at the time, this is an unfortunate circumstance common to many disputes over long-term leases and does not, by itself, mean that Sugarloaf was prejudiced. Moreover, given the clearly flawed numbering of the disputed lease amendment, it is difficult to conclude that Sugarloaf could have reasonably relied on the amendment's lack of effectiveness. Thus, this Court finds that there was no prejudice.

Accordingly, Sugarloaf's motion for partial summary judgment on Count II will be denied by separate order.

### IV. Sugarloaf's Motion to Strike Safeway's Expert Report

Sugarloaf has moved to strike the expert report of Emanuel Halper, an expert retained by Safeway to opine "in the context of the custom and usage of the real estate and shopping center

industries and commercial leasing specialists who actively participate in shopping center lease negotiations" as to "the Tenant's contention that the Landlord and Tenant intended that Paragraph 13c of the Original Lease be deleted by Section Thirteenth of the Second Lease Modification Agreement and that the language set forth on the top of Page 7 of the Second Lease Modification Agreement be substituted" and "the Landlord's denial of the Tenant's contention." Case No. 04cv3929, Paper No. 47, exh. 1 (report of Emanuel B. Halper, Esq.).

Federal Rule of Evidence 702 provides that if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert may testify thereto. Thus, under this rule, as applied by *Daubert v. Merrell Dow Pharms*., 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1995), Mr. Halper's report should be admitted only if it meets two criteria: (1) it will be helpful to the trier of fact, and (2) it concerns "scientific, technical, or other specialized knowledge."

Mr. Halper's report fails both tests. At issue in this case are (1) the interpretation of the language of a contract, and (2) if that contract is ambiguous, the intent of the parties when it was signed. *See Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). Mr. Halper's testimony is proffered as being potentially relevant to "the intent and effect of 'continuous operation clauses'" and "how those provisions were typically included or excluded from shopping center leases during the relevant time period." Case No. 04cv3929, Paper No. 47 (Opp. to Mot. to Strike) at 4. To the extent his report speaks to the intent of the parties, it is unhelpful because Mr. Halper was not present at the signing of the lease or any of its modifications and has no personal knowledge of the parties' intent. If Mr. Halper had such knowledge, his appropriate role would be as a fact witness, not an expert witness.

11

To the extent his report speaks instead to "the effect of 'continuous operation clauses,'" its foundation is not "scientific, technical, or other specialized knowledge" under Rule 702, but rather *legal* knowledge drawn from Mr. Halper's experience as a real estate attorney. "It is the responsibility—and the duty—of the court to state . . . the meaning and applicability of the appropriate law," *Adalman v. Baker, Watts, & Co.*, 807 F.2d 359, 366 (4th Cir. 1986), and—when aided by the capable legal argumentation of counsel—it has ample legal expertise to do so. Evidence supplied by experts as to legal conclusions is not admissible, "nor indeed 'evidence' at all." *Nutrition 21 v. United States*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991).

Accordingly, Sugarloaf's motion to strike will be granted by separate order.

### V. Safeway's Motion to Amend Complaint

The final motion before the Court is Safeway's motion to amend the Complaint. Safeway's proposed amendments make two changes to the Complaint in the Safeway action. First, Count IV of the Complaint, "Breach of Lease for Failing to Provide Evidence of Common Area Maintenance Expenses" is amended to "Breach of Lease for Improperly Billing Common Area Maintenance Expenses." Through discovery in this case, Safeway has received the evidence that it had faulted Sugarloaf for not providing; accordingly, it wishes to amend the Complaint to reflect its newfound knowledge and to better reflect the dispute as it has now been refined.[3] Second, Safeway adds a new Count V: "Breach of Lease for Failing to Allow Sublet." Safeway alleges that on September 9, 2005, it advised Sugarloaf that it intended to sublet the

---

[3] In so doing, Safeway apparently wishes to abandon any claim it may have had that Sugarloaf's failure to provide the evidence sooner was itself a breach of the lease.

12

disputed property to Sungwon, Inc., and that Sugarloaf refused to permit this on the grounds that the lease had been terminated.

Sugarloaf opposes these amendments under Fed. R. Civ. P. 15(a) and 16(b). Under Rule 16(b), Sugarloaf argues that Safeway has not shown good cause for the Court to modify its scheduling order to permit a belated amendment to the Complaint. Under Rule 15(a), it argues that it is prejudiced by the fact that discovery had almost concluded when the motion was filed (and has concluded entirely now).

The Court, however, will permit the amendments. Both amendments arise from new circumstances that have developed during litigation: the Count IV amendment arises from new information revealed in discovery, and the Count V amendment arises from Safeway's recent efforts to find a subtenant (which, it would seem, would be in Sugarloaf's best interests as well, and might aid a peaceful resolution of this dispute). Good cause is thus present. As to prejudice, the Court notes that although the amendments arise late in the proceedings, neither is likely to require much, if any, additional discovery. The Count IV amendment is intended to make the Complaint conform with the dispute as it has evolved through discovery, and depends on materials that Safeway received from Sugarloaf. Sugarloaf is hardly prejudiced by this. The Count V amendment seeks relief from an injury different in degree and kind from the relief Safeway initially sought, but that arises from the same general dispute—Sugarloaf denied the existence of the lease on the same grounds that it contests the entire action. Count V appears to rise or fall with the remainder of the dispute: if Safeway's construction of the contract is the correct one, Sugarloaf has compounded Safeway's injuries, but if Sugarloaf's construction is correct, then Sugarloaf was within its rights to forbid a sublease.

Rule 15(a) requires that "leave [to amend] shall be freely given when justice so requires." Justice so requires. Thus, Safeway's motion for leave to amend will be granted, and a deadline to answer the Amended Complaint will be established by separate order.

DATE: 3/27/06

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE